## GAJDA v. REICK–McJUNKIN DAIRY CO.

(Circuit Court of Appeals, Sixth Circuit.
April 6, 1927.)

No. 4726.

1. **Courts** &⟶406(1½)—**Circuit Court of Appeals, in determining propriety of directed verdict for defendant, must view evidence most favorably to plaintiff.**

In determining propriety of directed verdict for defendant, Circuit Court of Appeals must take that view of evidence, and inferences reasonably and justifiably to be drawn therefrom, most favorable to plaintiff, and determine

whether or not, under the law, a verdict might be found for plaintiff.

**2. Courts ⚖406(1¼)—New trial ⚖71— Credibility or preponderance of conflicting testimony cannot be passed on by Circuit Court of Appeals or trial judge.**

Neither Circuit Court of Appeals nor trial judge can rightly pass on conflicting testimony, or determine credibility or preponderance thereof.

**3. Highways ⚖184(3)—Negligence as to boy killed by truck on highway held for jury.**

Evidence, in action for death of boy when struck by truck near highway, *held* sufficient to require submission to jury.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Albert Gajda, administrator of the estate of Stanley Gajda, deceased, against the Reick-McJunkin Dairy Company. Judgment for defendant, and plaintiff brings error. Reversed, with directions.

Max S. Fishel, of Cleveland, Ohio (Bernsteen & Bernsteen, of Cleveland, Ohio, on the brief), for plaintiff in error.

W. L. Martindale, of Cleveland, Ohio (Wm. H. Thomas, of Cleveland, Ohio, on the brief), for defendant in error.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

PER CURIAM. This is an action for damages in causing the death of the deceased, a boy nine years old, who was struck and killed by defendant's truck, traveling on the public highway. Judgment was rendered for defendant on verdict directed by the court. This writ is to review that action.

The road was paved for a width of nine feet; a so-called ditch skirted the road on the north, separated from the paved portion by a "berm" of earth 3 feet in width, called a sidewalk. Shortly before the accident (about noon) the boy left home for school, walking down the driveway which led from his home to the road. When last seen alive he was standing near the milk stand belonging to the boy's father, adjoining the latter's land, and located about one foot from the driveway, near its intersection with the ditch and "berm," and being about one-half on the berm and one-half in the ditch. The truck driver testified that he saw the boy when the latter was coming from the house, "probably 150 feet from the roadway," and that he passed the boy when standing still "on the dirt" (the berm) about 2 feet from the pavement, the truck being then between 3 and 4 feet "from the edge of the dirt," and that after he had gone 10 or 12 feet beyond the boy he "felt a jar," and found that he had struck and killed him. The body was found several feet behind where the truck came to a stop. The driver testified that "at no time in driving my truck past the Gajda home on that day did I leave the paved portion of the road and drive over on the dirt"—his testimony in this respect being corroborated by that of a driver of a car coming from the opposite direction. The direction of verdict was apparently based upon the court's announced view that the testimony plainly indicated that the boy stood by the road, and at the instant of passing out of sight of the driver attempted to steal a ride on to school.

We think this view cannot be accepted without overlooking the competent testimony of three witnesses directly and substantially tending to show, from marks of the tire tread on both the pavement and the berm, in connection with blood marks on both the berm and paved track, that the truck, which was traveling westwardly, instead of turning to the left (south) just before reaching the boy, as the driver testified it did, turned to the right (north), and that the right, or north, wheel of the truck passed over the spot where the boy was said to have been standing when last seen alive, and after striking the boy turned back on the paved part of the road.

[1] In determining the propriety of the directed verdict for defendant, we must take that view of the evidence, and the inferences reasonably and justifiably to be drawn therefrom, most favorable to the plaintiff, and determine whether or not, under the law, a verdict might be found for the plaintiff. Worthington v. Elmer (C. C. A. 6) 207 F. 306, 308; Remus v. United States (C. C. A. 6) 291 F. 513, 518.

[2, 3] Neither we nor the trial judge can rightly pass upon conflicting testimony, or determine the credibility or preponderance thereof. Upon the record below, a conclusion that the boy, while standing upon the berm, was struck and killed through the sole negligence of defendant's driver, would be supported by substantial testimony, and would not be merely speculative.

The judgment of the District Court is accordingly reversed, with directions to award a new trial.